IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DONALD JACK HIRSCHOWITZ, SR.  *
    Plaintiff
   v.  *  CIVIL ACTION NO. AMD-06-19

MITCHELL J. FRANKS, et al.,  *
    Defendants
                             ***

MEMORANDUM

When alleging a constitutional failure-to-protect claim under the Eighth Amendment, a prisoner must present evidence that a prison official "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, for a prison official to be truly "subjectively reckless," he or she must have knowledge both of the risk of harm and also that conduct is inappropriate in light of that risk. *See Rich v. Bruce,* 129 F.3d 336, 339-40 (4th Cir. 1997). Negligent conduct on the part of prison officials who fail to protect a prisoner from a risk of harm posed by fellow inmates, without more, does not constitute a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. *See Whitley v. Albers,* 475 U.S. 312, 319 (1986); *Moore v. Winebrenner,* 927 F.2d 1312, 1315-17 (4th Cir. 1991). These principles foreclose the present claim.

I.

Plaintiff filed this failure-to-protect complaint for damages on a 42 U.S.C. § 1983 form, alleging negligence on the part of defendants. Plaintiff states that he was sent from the Central Laundry Facility ("CLF") to the Maryland Correctional Institution in Jessup ("MCI-J") after he informed defendants that he had been threatened by CLF inmate Bernard McClain, a member of the Black Gorilla Family ("BGF"). He complains that despite this history, he remained at MCI-J for

one month and was sent directly back to CLF in August 2004, where he was brutally attacked by inmates McClain, Terrance Todd, and three other BGF members within two weeks of his return. Plaintiff states that two correctional officers who were with him when he was flown to the University of Maryland Medical Center's Shock Trauma Unit ("UMMC") told him that the "BGF gang wrote notes to operations and told the officers to move me that day but they refused to do so . . . ." Paper No. 1.

Plaintiff filed an "affirmation of facts" in response to defendants' original motion to dismiss or for summary judgment. Thereafter, on June 6, 2006, the court ordered defendants to file a reply brief, accompanied by exhibits and declarations, addressing: (1) plaintiff's intrastate prison transit movements from July 2004 to September 2004, and the reasons for such movements;[1] (2) plaintiff's claims regarding information he allegedly provided to defendants Tanner and Leaberry at CLF in July and August 2004 regarding his safety at CLF; (3) the housing assignment record of Bernard McClain; (4) the informal and formal grievances and responses filed regarding plaintiff's safety concerns; and (5) the injuries plaintiff suffered as a result of the September 14, 2004, assault. Defendants subsequently filed a supplemental motion to dismiss[2] or for summary judgment and plaintiff filed a response thereto. The case may be determined on the pleadings. *See* Local Rule

---

[1] The exhibits attached to defendants' first summary judgment motion showed that during a two and one-half-month period plaintiff was moved from CLF to the Herman Tolson Boot Camp ("Boot Camp"), from Boot Camp to MCI-J, from MCI-J back to CLF, and from CLF to Brockbridge Correctional Facility. No base file documents were provided to show what events precipitated those transfers. Plaintiff alleged in his affirmation of facts that correctional staff removed him from CLF and Boot Camp in July 2004 based on safety concerns, then sent him back to CLF in August 2004. Thus, the court ordered supplementation, including documentation as to the reasons for the prison movements.

[2] In seeking dismissal of the action under Rule 12(b)(6), defendants argued that plaintiff has not alleged a claim of supervisory liability and has not fully exhausted his claims as required under 42 U.S.C. § 1997e. They subsequently waived the non-exhaustion argument.

105.6. (D. Md. 2004). For the reasons that follow, the defendants' motions for summary judgment shall be granted.

II.

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In making this determination, the evidence of the party opposing summary judgment is to be believed and all justifiable inferences drawn in his favor.  *See Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997) (*citing Anderson,* 477 U.S. at 255).  If the non-movant fails to make a sufficient showing on an element on which he has the ultimate burden of proof, summary judgment is appropriate because there is no genuine issue of material fact due to the complete failure of proof on an essential element of the non-movant's case.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Further, the non-moving party may not rest upon matters pleaded in his complaint, but must, by factual affidavit or the like, respond to the motion to show that there is a genuine issue for trial.  *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); Fed. R. Civ. P. 56(e).

III.

Plaintiff was housed at CLF from December 29, 2003, to July 7, 2004.  On July 7, 2004, plaintiff wrote a note indicating that he feared for his safety and had brought to the attention of CLF staff "problems that I was having with a lot of inmates here."  On that same date, CLF Lieutenant Anthony Tanner documented a discussion he had with plaintiff.  The report reads as follows:

3

>On the above date at approximately 1440 hrs, I interviewed the above-named inmate due to a note I received stating he was in fear of his life. During the course of the interview, Inmate stated he had been threatened numerous times in the last two weeks by inmate Bernard McClain DOC #310-274 along with 4 other inmates he was unable to identify. The threats were over money owed to McClain over a drug debt incurred by a close friend of Hirschowitz, identified as Mark Gunning. The debt was reportedly over narcotics. The days inmate Hirschowitz was threatened were his commissary dates. Hirschowitz stated McClain told him, "You'd better pay or don't go to sleep tonight."
>
>In light of the above, classification was contacted and a transfer to HLTBC was arranged and both inmates were listed on the enemy alert screen of OBSCIS.

Inmate Bernard McClain was immediately placed on plaintiff's OBSCIS offender enemies' list. Tanner's memorandum made no reference to the BGF. Plaintiff was transferred to Boot Camp that same day.

Shortly after arriving at Boot Camp plaintiff saw inmate Brian Pugh. Plaintiff completed an enemy alert form indicating that he had "robbed Brian Pugh's girlfriend on the street. I am trying to get away from said inmate before a confrontation occurs leading into a physical altercation where bodily injury is sustained one way or the other." Plaintiff was interviewed and acknowledged that he had enemies throughout the Division of Correction because of his career of robbing people on the street. He asked to be placed on protective custody and arrangements were made to again transfer him. Brian Pugh's name was entered on plaintiff's OBSCIS enemies' list and an immediate housing space was found at MCI-J. Plaintiff arrived at MCI-J on July 14, 2004. He was assigned to administrative segregation pending transfer to any pre-release unit.

On or about August 19, 2004, plaintiff was transferred from MCI-J to CLF. The reasons for this transfer are not reflected in plaintiff's base file. On that same date he filed an administrative remedy complaining that he had been transferred from CLF to MCI-J in July 2004, for an

"altercation that he couldn't control . . . . and those people are still here."[3] The remedy was received in the office of the Warden of the Pre-Release System on August 23, 2004. In a reply to plaintiff dated August 30, 2004, the remedy coordinator administratively dismissed the grievance, informing plaintiff that "case management decisions and recommendations cannot be addressed via the ARP process." The coordinator added, however, that "due to the nature of your complaint, I am forwarding this complaint to Ms. Sorensen for whatever actions she deems necessary." In her Declaration, Sorensen affirms that she has no recollection of receiving a copy of the remedy, nor does she have a recollection of having any personal knowledge of a threat to plaintiff from another inmate at CLF during the time he was housed there.

On September 2, 2004, plaintiff filed an informal inmate complaint form regarding his inability to obtain a job on an outside work detail despite his classification, pre-release status, and the fact that he had been at CLF for almost two weeks. Defendants state that plaintiff made no mention of his concern for his safety in that complaint and did not make any other formal or informal complaints prior to September 14, 2004.

There is no dispute that on the night of September 14, 2004, plaintiff approached Captain Rudolph Smith at approximately 11:30 p.m. in the A Building hallway at CLF. He had a swollen chin, noticeable contusions around his face and head, and was bleeding from an apparent head wound. He reported that he had been "banked" in the Carroll Dormitory of CLF by two other inmates and identified them by their bunk numbers. Plaintiff was examined by a nurse who found him disoriented and unable to provide any information. A call to 911 was made, and an ambulance arrived. A medical determination was made that plaintiff should be examined at UMMC. He was transported to UMMC by Medevac helicopter.

---

[3] Defendants do not dispute that inmate Bernard McClain was housed at CLF when plaintiff returned to CLF in August 2004, and was housed there on September 14, 2004.

Defendants claim that before plaintiff was taken to UMMC he identified Terrence Todd and Montel Robinson as his assailants in a photographic array. Both Todd and Robinson were charged with infractions and transported to MCI-J pending disciplinary proceedings.[4] Defendants claim that prior to the assault, neither Todd nor Robinson had been designated by plaintiff as an enemy. They further state that at no time did plaintiff mention the name of Bernard McClain, any other unnamed inmate, or the BGF gang as being involved in the incident.

Plaintiff was treated for a scalp wound at UMMC and released. Officer John Seymour accompanied plaintiff to UMMC and, along with another correctional officer, returned him to the Maryland House of Correction's hospital where plaintiff was evaluated by medical staff.[5] Medical staff recorded that plaintiff had sutures to his mouth and mild swelling to the left side of the mouth corner, but no bleeding. Plaintiff reported tenderness to the back of his head. Otherwise, no serious head injury was noted. Plaintiff was prescribed Keflex and Bacitracin and advised to clean his mouth three to four times daily.

After treatment at the prison hospital, plaintiff was transferred to the Brockbridge Correctional Facility. On September 17, 2004, he addressed a note to Lieutenant Herd reporting that he had received another threat from an inmate unknown to him. In this note he alleged that the threat came from the BGF gang. Plaintiff was again transferred, this time to the Maryland Correctional Training Center in Hagerstown. In 2004, plaintiff was apparently released on

---

[4] Both Todd and Robinson were added to plaintiff's OBSCIS enemies' list on September 17, 2004.

[5] Seymour, who is not named as a defendant, affirms that he had no conversation with plaintiff regarding the incident and recalls that plaintiff had stitches to his mouth.

mandatory supervision. He was returned to the Division of Correction in 2005 and is currently housed at the Metropolitan Transition Center in Baltimore, Maryland.[6]

The court concludes as a matter of law that no constitutional violation can be made out against defendants as to plaintiff's return to CLF. Plaintiff sues defendants Franks and Sorensen in their supervisory capacities as Warden for the Maryland Pre-Release System and Facilities Administrator for CLF.[7] There is no allegation, however, that Franks or Sorensen had any personal involvement in plaintiff's return to CLF in August of 2004. Moreover, there is no showing that defendants Tanner, Leaberry, or Legrand had any involvement in plaintiff's return to CLF in August 2004. Indeed, Tanner and Leaberry took immediate action in July 2004 to ensure that plaintiff was transferred out of CLF. The fact that plaintiff was returned to CLF on August 19, 2004, by the MCI-J transfer coordinator in no way implicates these defendants.

Eighth Amendment issues related to the alleged actions or inactions of the named defendants after plaintiff's transfer back to CLF also provide no basis for liability. Four days after his return to CLF, plaintiff filed a remedy complaining of his transfer. The grievance was administratively dismissed by the remedy coordinator on August 30, 2004, but was allegedly to be forwarded to Facilities Administrator Sorensen. Sorensen, however, has no recollection of receiving that remedy

---

[6]Defendants note that on March 23, 2005, when plaintiff completed a questionnaire at the commencement of his current sentence, he answered any questions regarding his being the target of or in danger of gang violence in the negative.

[7]In order to maintain a cause of action against any official, a plaintiff must show that the defendant was personally involved in the alleged deprivation of his constitutional rights; the doctrine of respondeat superior does not apply to § 1983 actions. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928-29 (4th Cir. 1997). Thus, a supervisor who has not directly participated in the alleged deprivation of constitutional rights cannot be found liable for damages unless plaintiff shows that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury; (2) the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

or any other document from plaintiff regarding his safety at CLF.[8] By his declaration, Lieutenant Leaberry and Legrand also deny being privy to an oral or written complaint from plaintiff regarding his transfer and housing at CLF in August or September 2004, and plaintiff provides no specific rebuttal evidence to counter their affirmations.[9]

There is no dispute that after the August 23, 2004, remedy, plaintiff filed no further written complaints regarding his safety. Instead, he complained about the failure to place him on a outside work detail. Plaintiff was confined in a pre-release facility at all relevant times. Unlike his situation in higher security level facilities, he presumably had access to classification and security personnel in order to present written and verbal requests for protective custody, transfer to another facility, or housing refusal. Indeed, as already noted, he was able freely to submit written notes regarding his safety in the preceding months. Nonetheless, there is no evidence that he made requests for transfer, protective custody, or alternative housing upon his transfer to CLF. Furthermore, while plaintiff was assaulted by CLF inmates Todd and Robinson on September 14, 2004, these inmates were not on plaintiff's enemies' list. Although plaintiff did have a documented enemy at CLF, namely, Bernard McClain, he has failed to project evidence of a nexus between the attack by Todd and Robinson to Bernard McClain or to the BGF gang.[10]

Plaintiff was assaulted by two other CLF inmates, Terrence Todd and Montel Robinson, on September 14, 2004. This is unfortunate. A prison setting is, at best, a volatile environment. It is

---

[8] In his second affirmation of facts plaintiff claims that Sorensen was made aware that he had been threatened by Bernard McClain and unidentified inmates based on Lieutenant Tanner's July 7, 2004, note.

[9] Defendants correctly observe that at no point does plaintiff allege that either Warden Franks or Lieutenant Tanner had knowledge that plaintiff had returned to CLF and was concerned about his safety.

[10] Section 1983 requires proof of a causal nexus between the actions taken by a particular person under color of state law and the constitutional deprivation. *See LaMarca v. Turner,* 995 F.2d 1526, 1538 (11th Cir. 1993); *Redman v. County of San Diego,* 942 F.2d 1435, 1439 (9th Cir. 1991) (en banc).

8

sometimes explosive and is always potentially dangerous, particularly in a dormitory setting. Confrontations and fights among prisoners are an all-too-common event. It would appear that personnel at MCI-J missed the fact that Bernard McClain was on plaintiff's OBSCIS enemies' list and that McClain was still housed at CLF. The actions of MCI-J personnel in transferring plaintiff back to CLF likely constituted malfeasance.  Further, it would appear that plaintiff's August 23, 2004, grievance was handled haphazardly. Nevertheless, plaintiff has not demonstrated that these classification and administrative actions (or inactions) are directly attributable to the named defendants or that the actions amounted to deliberate indifference under the standard set out under *Farmer*.

IV.

For the aforementioned reasons, the court concludes that plaintiff has failed to establish, and cannot establish, an Eighth Amendment failure-to-protect violation on the part of defendants. Defendants' motions for summary judgment shall be granted.  An Order follows.


Date: February 15, 2007            /s/
                                   Andre M. Davis
                                   United States District Judge

9